Filed 7/15/13  P. v. Hernandez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JUAN CARLOS HERNANDEZ,<br><br>    Defendant and Appellant. | F063465<br><br>(Super. Ct. No. F11902241)<br><br>**OPINION** |

### THE COURT\*

APPEAL from a judgment of the Superior Court of Fresno County.  James M. Petrucelli, Judge.

Gabriel C. Vivas, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and Rebecca Whitfield, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Cornell, Acting P.J., Kane, J. and Peña, J.

Juan Carlos Hernandez appeals from a conviction for domestic abuse and resisting arrest. He was sentenced to a term of 11 years because he had prior convictions for domestic abuse, had served a prior prison term, and had a prior conviction that constituted a strike.

The only issue is whether he received ineffective assistance of counsel when trial counsel intended to exercise a preemptory challenge on a juror, but inadvertently failed to do so. We conclude, even if we were to assume trial counsel's performance was deficient, Hernandez cannot establish he suffered any prejudice from the omission. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

### *The charges*

Hernandez was charged with two counts of inflicting corporeal injury on a spouse, in violation of Penal Code section 273.5, subdivisions (a), (e)(1)[1] and one count of misdemeanor resisting arrest, in violation of section 148, subdivision (a)(1). In addition, the information alleged that because Hernandez had suffered prior convictions for violating section 273.5, subdivision (a) within the preceding seven years, he was subject to increased punishment pursuant to section 273.5, subdivision (e). Finally, the information alleged that Hernandez had suffered a prior conviction that constituted a strike within the meaning of section 667, subdivisions (b)-(i).

[1]All further statutory references are to the Penal Code unless otherwise stated.

The information charged Hernandez with violating section 273.5, subdivision (e)(1), and the abstract of judgment reflects Hernandez was convicted of violating section 273.5, subdivision (e)(1). Both documents are incorrect. The crime of domestic abuse is codified in section 273.5, subdivision (a). Subdivision (e) is not a substantive crime. The information should have charged Hernandez with violating subdivision (a), and also alleged he was subject to increased punished pursuant to subdivision (e)(1). We will order the trial court to correct the abstract of judgment to indicate that Hernandez was convicted of violating subdivision (a) and found to have met the increased punishment criteria of subdivision (e)(1).

2.

*The testimony*

The two felony allegations arose out of conflicts between Hernandez and Vivian Centeno. The two were cohabitating at the time of the incident. Centeno testified that she had a poor memory and could not remember much of what had occurred on the date of the incident. She did recall that Hernandez wanted her attention, but she was working under her vehicle and did not want to be bothered. Hernandez grabbed her leg to get her attention. She apparently called out to a friend, Stephanie Trevino, and asked her to call the police. Centeno did not think Trevino would do so. Centeno spoke with the police when they arrived but could not recall what she had said to them. She was certain, however, that Hernandez did not hurt her in any manner, and any marks on her body were the result of a medical condition or hurting herself while working on her vehicle.

The prosecutor played for the jury a recording of a phone conversation between Centeno and Hernandez that occurred after Hernandez was arrested. During the phone conversation, Hernandez and Centeno proclaimed their love for each other. In other portions of the conversation, Centeno made statements that could be interpreted as suggesting she would help Hernandez avoid a jail term.

Trevino testified she was goods friends with both Hernandez and Centeno and was living with them on the date of the incident. Trevino did not see Hernandez hit Centeno on that date or any other date. Centeno did ask her to call the police on that date, but Trevino did not know why. Hernandez was with Centeno at the time, but everything appeared normal. When Centeno repeated her request, Trevino went across the street and called the police.

Fresno Police Officer Phia Vang responded to the scene on the date of the incident and interviewed Centeno. Centeno appeared to be upset and stated she had been assaulted. She had bruises on her arms and a fresh scratch on the side of her face.

Centeno described the following events to Vang. Centeno was working under her truck when Hernandez grabbed her leg and pulled her out from under the truck.

3.

Hernandez placed his arm around her neck and then tried to pull her into the house. Centeno struggled with Hernandez and held onto the vehicle in an attempt to avoid being taken into the residence. Hernandez grabbed her arms and pushed her into the residence. Centeno ran into her son's bedroom. Hernandez followed her, so Centeno ran into her bedroom and yelled for Trevino to call the police. Hernandez left the residence, departing through the alley.

When Vang asked Centeno about a bruise that appeared to be older, Centeno stated it probably came from an altercation between Hernandez and herself that had occurred the day before. Centeno stated Hernandez became upset because Centeno was talking to another man. Hernandez grabbed her in a bear hug and threw her onto her bed. He then pointed a pocketknife at Centeno before departing.

While Vang was interviewing Centeno, Fresno Police Officer Felipe Lucero located Hernandez a short distance away from the residence. Lucero pointed his "less-lethal" beanbag shotgun at Hernandez and ordered Hernandez to the ground. Hernandez ran. Lucero ordered Hernandez to stop. When Hernandez did not do so, Lucero fired a beanbag, striking Hernandez on the wrist. Hernandez continued running. Lucero shot three more beanbags at Hernandez, striking him at least once. Lucero's partner then began pursuing Hernandez on foot and eventually detained him.

The People presented an expert witness to discuss battered woman's syndrome in general, and the parties stipulated to Hernandez's prior convictions for domestic violence.

### *Verdict and sentencing*

The jury convicted Hernandez of one count of domestic violence and one count of resisting arrest. The jury found Hernandez not guilty of the second count of domestic violence. Hernandez admitted he had one conviction that constituted a strike within the meaning of section 667, subdivisions (b)-(i) and had served a prior prison term within the meaning of section 667.5, subdivision (b) as alleged in the complaint.

The trial court imposed an aggravated term of five years for the domestic violence conviction and then doubled that term because of the strike prior.  It added one year because Hernandez had served a prior prison term, for a total term of 11 years.

## DISCUSSION

The only issue in this case is whether Hernandez's counsel was ineffective at trial.  The sole basis of this claim is an assertion that counsel forgot to exercise a preemptory challenge on the juror in seat No. 7 (Juror No. 7) after the trial court denied counsel's motion to excuse him for cause.

The standard of review for an ineffective assistance of counsel claim is well established.  A defendant is entitled to a new trial if he received ineffective assistance of counsel at trial.  (*People v*. *Lagunas* (1994) 8 Cal.4th 1030, 1036.)

"Establishing a claim of ineffective assistance of counsel requires the defendant to demonstrate (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation prejudiced the defendant, i.e., there is a 'reasonable probability' that, but for counsel's failings, defendant would have obtained a more favorable result.  [Citations.]  A 'reasonable probability' is one that is enough to undermine confidence in the outcome.  [Citations.]

"Our review is deferential; we make every effort to avoid the distorting effects of hindsight and to evaluate counsel's conduct from counsel's perspective at the time.  [Citation.]  A court must indulge a strong presumption that counsel's acts were within the wide range of reasonable professional assistance.  [Citation.] … Nevertheless, deference is not abdication; it cannot shield counsel's performance from meaningful scrutiny or automatically validate challenged acts and omissions.  [Citation.]" (*People v. Dennis* (1998) 17 Cal.4th 468, 540-541.)

Factual support for the claim exists in the record because after the jury was impaneled, and before testimony was taken, counsel moved for a mistrial on the basis that

she had intended to use one of her preemptory challenges on Juror No. 7 after her motion to dismiss him for cause was denied. The trial court denied the motion.

During voir dire, Juror No. 7 stated he was an attorney and he had three relatives connected to law enforcement -- an aunt and uncle who were both retired from the Merced County Sheriff's Office and a cousin who was employed as a deputy sheriff in San Diego County. Juror No. 7 also had a very close friend who, until recently, was a prosecutor in the Fresno County District Attorney's Office. Finally, he explained he was an attorney in private practice. Approximately 50 percent of his clients were employed in law enforcement or as correctional officers, with the majority of the matters related to employment issues.

Juror No. 7 denied that his relationship with the former prosecutor would affect his ability to be fair and impartial and stated he would be able to judge the testimony of police officers the same as he would any other witness. Nor would the the fact that he had relatives who were employed in law enforcement cause him any "difficulties." Counsel received consistent responses when she questioned Juror No. 7 about these issues.

Hernandez asserts counsel's failure to exercise a preemptory challenge to excuse Juror No. 7 constituted ineffective assistance of counsel. Since counsel admitted this omission during trial, we accept for the sake of this appeal that the omission was inadvertent.

This omission, however, does not establish ineffective assistance of counsel. Even if we were to assume, for the sake of argument, that the omission resulted in deficient performance by counsel, Hernandez still must establish that had counsel used a preemptory challenge on Juror No. 7, there is a reasonable probability he would have obtained a more favorable result. This is a showing Hernandez cannot make.

Hernandez relies on essentially two facts in his attempt to establish prejudice. First, he points out that Juror No. 7 was voted to be the foreperson of the jury and

6.

presumably was able to influence the other jurors. Second, he points out that the prosecution's entire case was based on the jury deciding who was more believable -- victim Centeno or Police Officer Vang. Hernandez asserts that because Juror No. 7 had numerous clients who were police officers, he must have been convinced that Vang was more truthful than Centeno.

This entire argument is based on speculation, not evidence. There is nothing in the record that suggests Juror No. 7 was predisposed to believe Vang over Centeno. Indeed, Juror No. 7 stated he would not be so predisposed, so this suggestion directly contradicts Juror No. 7's sworn testimony.

Second, there is nothing in the record to suggest Juror No. 7 had any influence over any of the other jurors. The jurors were instructed to "decide the case for yourself, but only after you have discussed the evidence with the other jurors." Since we presume the jury followed the instructions (*People v. Williams* (2010) 49 Cal.4th 405, 469), we presume each juror faithfully fulfilled his or her duty and was not influenced by Juror No. 7. The fact the jury acquitted Hernandez on count 2 shows the jurors were swayed by the evidence and not by any perceived bias or special influence on the part of Juror No. 7.

Finally, the evidence against Hernandez on count 1 was overwhelming. His past convictions demonstrated a disposition to commit domestic violence. Centeno stated, in essence, that she would lie for Hernandez because she was in love with him. The bruises observed by Vang were consistent with domestic violence. Moreover, expert testimony explained that it was not uncommon for victims of domestic violence to recant their accusations. Each of these reasons makes it impossible for Hernandez to establish any possibility that he would have achieved a better result if Juror No. 7 had not been on the jury.

We are not swayed by the fact the jury requested the court reporter read back Vang's testimony and the jailhouse conversation between Centeno and Hernandez. The request could have been related only to the second domestic violence charge, of which

7.

Hernandez was found not guilty, and not to the charge of which Hernandez was convicted. Once again, Hernandez asks us to engage in speculation to reach the result he wishes. This we will not do.

## DISPOSITION

The judgment is affirmed. The trial court is directed to prepare a corrected abstract of judgment to reflect the crime of which Hernandez was convicted and to forward a copy of the corrected abstract of judgment to all appropriate agencies.